UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RICHARD K. MATTERS, JR.,

                      Plaintiff,

      v.                                                           1:13:-cv-578

WILLIAM J. ESTES, JOHN F. BARR, AND
NEW YORK STATE THRUWAY AUTHORITY,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff Richard K. Matters commenced the instant action against Defendants William Estes, John Barr, and the New York State Thruway Authority ("NYSTA") pursuant to 42 U.S.C. § 1983, asserting that Defendants' decision not to grant Plaintiff permission to run for political office violates his rights as protected by the First and Fourteenth Amendments to the United States Constitution. Plaintiff also asserts similar claims under the New York State Constitution.

Plaintiff moved by order to show cause seeking a preliminary injunction and a temporary restraining order. Defendants have timely opposed the motion for injunctive relief.

**I.**     **FACTS**

The instant matter involves Plaintiffs' requests for approval from the NYSTA to run for political office. The applicable procedure for such approvals is as follows. As person seeking to conduct an outside activity must submit a completed Request for Approval of

Outside Activity to his or her supervisor for initial approval to initiate the review process. Under applicable policies, an outside activity may not present a conflict with the policies or interests of the NYSTA or the job duties of a NYSTA employee. If the request is approved by the applicant's supervisor, the request is then forwarded to the appropriate Department Head for review and approval. If the Department Head grants approval, the matter is forwarded to the Bureau of Personnel, which conducts an investigation into the applicant's job functions. Without making a determination, the Bureau of Personnel forwards the application along with the results of its investigation to the Legal Department to determine whether the proposed outside activity conflicts with any relevant laws, regulations, policies, or ethical obligations. The Legal Department forwards the matter to Jonathan Gunther, Esq., the NYSTA's Ethics Counsel. Gunther obtains any additional information that is needed to review the request and conducts a review. This review includes determining whether the applicant has received prior approvals and whether the applicant has been the subject of any investigations or disciplinary matters related to the requested outside activity. Upon conclusion of his review, Gunther prepares a memorandum that includes his review and analysis, as well as any proposed restrictions and any notable outstanding issues that may require resolution or further consideration. This memorandum is shared with Defendant William Estes, the NYSTA's General Counsel/Chief Ethics Officer, for his approval. If the memorandum is approved, it is provided to the Outside Activities Committee for its consideration.

Plaintiff is employed as a Real Estate Officer by Defendant NYSTA. In July 2002, Plaintiff submitted to NYSTA a Request for Approval of Outside Activities so he could run for the position of Councilman (Town Board Member) in the Town of East Greenbush. This request was approved, although Plaintiff did not win the election. In June 2003, Plaintiff

submitted another Request for Approval of Outside Activities to again run for the Councilman position.  This request also was approved, but Plaintiff did not win the election.  In May 2005, Plaintiff again sought approval to run for the Councilman position.  The request was approved and Plaintiff again lost the election.  A similar approval was granted in April 2007.  Plaintiff was elected to a two year term.  In seeking these approvals, Plaintiff certified that he read and understood the conditions of the approval of his request to engage in outside activities.  These conditions included, among other things, the following restrictions: the outside activity not interfere or conflict with the proper discharge of NYSTA duties; the outside activity not conflict with hours of work normally spent performing NYSTA duties; and the outside activity not involve the use of NYSTA personnel, resources, materials, equipment, facilities, telephones, etc.  Plaintiff sought and obtained another approval in May 2009 and was elected for a four year term that ends in December 2013.

In November 2010, Plaintiff was charged by the NYSTA pursuant to New York State Civil Service Law § 75 with violating Executive Instruction #2008-13 and 2009-12 (Outside Activities and Honoraria); and/or Executive Instruction 2008-9 and 2009-8 (Political Activities); and Executive Instruction 2001-3 (Telephone Services Use Policy).  The charges covered the period of May 2009 through August 2010 and alleged that Plaintiff used NYSTA telephone resources to conduct non-NYSTA business.  Specifically, it was claimed that Plaintiff used NYSTA telephones during the regularly scheduled work day for matters concerning his position as Councilman.  In January 2011, Plaintiff entered into a stipulated settlement in resolution of the charges, whereby Plaintiff agreed to pay NYSTA $3,727.60.  Plaintiff was not required to resign his position as Councilman.

In 2013, Plaintiff submitted two separate Requests for Approval of Outside Activity. In January 2013, Plaintiff sought approval to run as a legislator in Rensselaer County. This request was approved by Plaintiff's direct supervisor, Mr. Kirby, who, pursuant to applicable procedure, sent the request to Mr. Bryan. My. Bryan approved the request and forwarded it to the Bureau of Personnel. Meanwhile, in February 2013, Plaintiff again sought approval to run for the Councilman position. This request was also approved by Kirby and Bryan and then forwarded to the Bureau of Personnel. The matters ultimately ended up with Gunther. Gunther conducted his review and analysis and prepared a memorandum which he presented to Estes. Estes advised Gunther that he believed Plaintiff to have had been involved with an ethics investigation. Gunther investigated further and learned from the Department of Audit and Management that disciplinary action had been taken against Plaintiff in relation to the use of NYSTA resources (time and telephones) to engage in his outside activity as a Councilman. Specifically, it was learned that Plaintiff had made at least 454 phone calls totaling 27 hours and 15 minutes on non-NYSTA business in 2008; at least 573 phone calls totaling 32 hours and 6 minutes on non-NYSTA business in 2009; and at least 467 phone calls totaling 37 hours and 56 minutes on non-NYSTA business during the first eight months of 2010. It also was learned that, as previously described, Plaintiff was charged with: (a) using NYSTA telephone resources to conduct non-NYSTA business related to his position as Councilman on 175 specific dates from May 2009 through August 2010; (b) conducting business related to his Councilman position during regular NYSTA work hours;

and (c) using NYSTA telephone resources for non-authority business between May 15, 2009 and August 4, 2010.[1]

On April 16, 2013, Gunther submitted to the Committee on Outside Activity (which consisted of John Bryan, Chief Operating and Financial Officer; Defendant John Barr, Director of Administrative Services; and Defendant Bill Estes, General Counsel) his memorandum on Plaintiff's request. The memorandum is factual in nature and does not make a recommendation. The memorandum contained a place for each of the three members of the Committee on Outside Activity to indicate their vote. On April 16, 2013, the Committee met and unanimously voted to deny the request. The results were forwarded to Plaintiff.

Plaintiff then commenced the instant action claiming that the denial of the 2013 requests violated his rights as protected by the First and Fourteenth Amendments to the United States Constitution and similar provisions of the New York State Constitution. Presently before the Court is Plaintiff's motion for a preliminary injunction seeking to preclude Defendants from taking any adverse action against him for running from office and requiring Defendants to approve his Outside Activity Requests.

## II.     STANDARD OF REVIEW

The Court may grant a preliminary injunction if the moving party establishes (a) irreparable harm; and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. Christian

---

[1] The charges did not include conduct prior to May 2009 due to the time limitations set forth in N.Y. Civ. Serv. Law § 75(4).

Louboutin S.A. v. Yves Saint Laurent America Holdings, Inc., 696 F.3d 206, 215 (2d Cir 2012).

### III. DISCUSSION

#### a. Likelihood of Success on the Merits

##### 1. First Amendment

Plaintiff claims that Defendants' actions violate his rights to free speech as protected by the First Amendment.  Plaintiff argues that Defendants failed to "identify any conflict between [Plaintiff's] work duties and his service as a member of the East Greenbush Town Board, or as a prospective member of the Rensselaer County Legislature." Pl. Mot. at 4.  Plaintiff, therefore, contends that "NYSTA has exceeded the bounds of the appropriate limitations upon the political activity of public employees. . . ."  Id.  Defendants counter that they had a rational basis for the decision to deny Plaintiff's request.  In particular, Defendants claim that the denial was based on: (i) Plaintiff's demonstrated and admitted failure to comply with NYSTA's policies and to abide by the terms and conditions of his past approvals; (ii) his misappropriation of NYSTA resources that constituted fraud, waste, and abuse of NYSTA's equipment; (iii) abuse of the trust bestowed upon him not to perform outside work activities during his NYSTA work hours; and (iv) his demonstrated inability to separate his political office from his NYSTA duties.

The extent of a public employee's right to run for public office is not clearly established.  In Clements v. Fashing, 102 S. Ct. 2836 (1982), the Supreme Court, applying an Equal Protection analysis, stated that "[f]ar from recognizing candidacy as a 'fundamental right,' we have held that the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'" Id. at 2843 (quoting Bullock v. Carter, 405 U.S. 134, 143

(1972)). The Court continued to note that "[d]ecision in this area of constitutional adjudication is a matter of degree, and involves consideration of the facts and circumstances behind the [election] law, the interests the State seeks to protect by placing restrictions on candidacy, and the nature of the interests of those who may be burdened by the restrictions." Id. at 2844. The Court continued to note that a state has a legitimate interest in ensuring that a government official will "neither abuse his position nor neglect his duties because of his aspirations for higher office." Id. at 2846. In a 2010 case, the Eleventh Circuit noted that:

> Supreme Court and circuit precedent is not entirely clear regarding the degree of First Amendment protection for candidacy, however, every case addressing the issue has found at least some constitutional protection. A plaintiff's candidacy cannot be burdened because a state official wishes to discourage that candidacy without a whisper of valid state interest. An interest in candidacy, and expression of political views without interference from state officials who wish to discourage that interest and expression, lies at the core of values protected by the First Amendment.

Randall v. Scott, 610 F.3d 701, 713 (11th Cir. 2010); see also Sain v. Mitchell, 2009 WL 1457722 (W.D. Tenn. 2009); James v. Texas Collin County, 535 F.3d 365, 377 (5th Cir. 2008) ("it is unclear that the First Amendment provides a right to run for office that extends generally to government employees."). The Eleventh Circuit court ultimately framed the question as whether the public employer's interest in precluding the employee from running for public office "is of sufficient importance to justify the infringement of [the employee's] First Amendment right to run for [political office]." Id.[2]

In the context of a free speech analysis, "[g]enerally, a public employee is protected from adverse employment decisions based upon the employee's exercise of his First

---

[2] In Randall, the plaintiff was fired for running for political office and the Eleventh Circuit inquired whether the state's interest in "permitting [the defendant] to fire [the plaintiff] is of sufficient importance to justify the infringement of [the plaintiff's] First Amendment right to run for Chairman of the Clayton County Board of Commissioners." Id.

Amendment rights." Coogan v. Smyers, 134 F.3d 479, 483 (2d Cir. 1998).  Subject to certain limited exceptions, "[p]olitical patronage or party affiliation are impermissible reasons for" taking adverse employment action.  Id.  That being said, a public employee's First Amendment rights are not without limitations.  Borrowing from the analysis of First Amendment retaliation claims, a public employer may limit an employee's speech upon a showing that "it reasonably predicted that the [employee's conduct] would be disruptive, the disruptive potential outweighed the value of the [political activities], and the [prohibition] was taken not [for improper motives] but to prevent disruption."  Nagle v. Marron, 663 F.3d 100, 113, n.11 (2d Cir. 2011).

    Applying the foregoing principles here, the Court finds that Plaintiff has not demonstrated a likelihood of success on the merits.  Aside from Plaintiff's unsupported allegations, there is nothing in the record reasonably suggesting that Defendants' decision not to approve the requests was influenced by Plaintiff's party affiliation, speech, an interest in discouraging Plaintiff's candidacy, or any other improper motive.[3]  Such an inference is not reasonable in light of the facts that Plaintiff's prior requests to run for Councilman had all been approved and the requests for approval at issue here were the first to be considered by Defendants since Plaintiff was charged with, and found to have violated, applicable state policies.  In light of the fact that Plaintiff violated clear NYSTA policies over the course of several years despite having expressly acknowledged those policies and agreed to abide by them (on multiple occasions), Defendants had good reason to question whether Plaintiff

---

[3] As Department Head, Bryan, who was aware of Plaintiff's violations of NYSTA policies, initially approved Plaintiffs' requests.  After reviewing Gunther's memorandum and meeting with the other members of the Committee, Bryan, who was then acting as a member of the Outside Activity Committee, ultimately voted to deny the requests.  Bryan's having changed his vote, without more, is not suggestive of improper motive in the decision to deny Plaintiff's requests.

would abide by the restrictions on his outside activity, abide by applicable policies, and refrain from using NYSTA resources and time to conduct his outside activities. See James, 535 F.3d at 377-78 ("While it is unclear that the First Amendment provides a right to run for office that extends generally to government employees, [the plaintiff's] broader claim would nevertheless fail because he has presented no competent summary judgment evidence that his employment was terminated because of his decision to run for office, independent of and apart from his alleged campaigning on county property or soliciting on duty county employees."). Defendants had sufficient reason to believe that Plaintiff would "abuse his position" or "neglect his duties because of his [political] aspirations." Clements, 102 S. Ct. at 2846. The Court, therefore, finds that the potential disruption to the workplace outweighs Plaintiff's right to run for office. Because there is nothing before the Court suggesting that Defendants determination was anything other than viewpoint neutral and was based on legitimate considerations of Plaintiff's ability to carry out the duties of his job without abusing NYSTA time and equipment, Plaintiff's First Amendment claim is unlikely to succeed. James, 535 F.3d at 379.[4]

### 2. Fourteenth Amendment

Although Plaintiff claims a violation of his Fourteenth Amendment rights, the basis for any such claim is unclear. Plaintiff does not point to any evidence suggesting he was treated differently than any other similarly situated person. Further, Plaintiff had the right to challenge Defendants' decision in an Article 78 proceedings, thereby precluding any procedural due process claim. Lastly, Plaintiffs' allegations are insufficient to demonstrate

---

[4] This analysis similarly applies to Plaintiff's claim under the New York Constitution. Golden v. Clark, 76 N.Y.2d 618 (1990).

the type of arbitrary, outrageous, or gross abuse of governmental authority necessary to establish a substantive due process claim. Accordingly, Plaintiff is unable to demonstrate a likelihood of success on the Fourteenth Amendment claims.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is DENIED and the Temporary Restraining Order is hereby VACATED.

IT IS SO ORDERED.

Dated: May 31, 2013

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge